FILED

2015 Aug-03  PM 04:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JAMES RHOTON and SARAH RHOTON,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION NO.: _____** |
| **v.** ) | |
| ) | |
| **3M COMPANY, and** ) | |
| **ARIZANT HEALTHCARE, INC.,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** ) | |
| ) | |

**COMPLAINT**

COME NOW Plaintiffs, James Rhoton and Sarah Rhoton, by and through their undersigned counsel, and bring this Complaint against 3M Company and Arizant Healthcare, Inc. (hereinafter referred to collectively as "Defendants"),  and allege as follows:

1.     This is an action for damages relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective device sold under the trade name of Bair Hugger Forced Air Warming device (hereinafter "Bair Hugger", or "Defective Device").

## PARTIES

2.     Plaintiff, James Rhoton, is an adult resident of Jefferson County, Alabama and claims damages as set forth below. Plaintiff's Spouse, Sarah Rhoton, is an adult resident of Jefferson County, Alabama and claims damages as a result of loss of consortium.

3.     Defendant 3M Company ("3M") is a Delaware corporation with its principal place of business located in Maplewood, Minnesota. 3M is engaged in the business of researching, developing,

designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the Bair Hugger.

4.      Defendant Arizant Healthcare, Inc. ("Arizant") is a Delaware corporation. Arizant conducts business throughout the United States, including the State of Alabama, and is a wholly owned subsidiary of Defendant 3M.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) based upon the complete diversity of the parties. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

6.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district. Defendants conduct business in this judicial district to include, but not limited to, the sale of the Bair Hugger.

## SUMMARY OF THE CASE

7.      The Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold the Bair Hugger.

8.      As a result of the defective design of the Bair Hugger, Plaintiff has suffered and may continue to suffer severe and permanent personal injuries.

9.      On July 15, 2013, the Bair Hugger was used on Plaintiff during the course of Plaintiff's left hip replacement surgery.

10.     Because the Bair Hugger was used, contaminants were introduced to Plaintiff's open surgical wound, resulting in a Methicillin-resistant Staphylococcus aureus (MRSA) infection.

11.     Due to the infection, Plaintiff required additional surgical procedures to remove the implant and clean the infected area within less than eight months from the original implant surgery. Plaintiff continues to suffer substantial damages, including but not limited to impaired mobility, making the simple movement of walking a challenge.

12.     Plaintiff now suffers and will continue to suffer from permanent damages as a result of the Bair Hugger-induced infection.

13.     The Defendants concealed and continue to conceal their knowledge of the Bair Hugger's unreasonably dangerous risks from Plaintiff, other consumers, and the medical community.

14.     The Defendants failed to conduct adequate and sufficient post-marketing surveillance after they began marketing, advertising, distributing and selling the Bair Hugger.

15.     As a result of the Defendants' actions and inactions, Plaintiff was injured due to the use of the Bair Hugger, which has caused and will continue to cause Plaintiff's various injuries and damages. Accordingly, Plaintiff seeks compensatory damages.

## FACTUAL BACKGROUND

16.     More than 50,000 Bair Hugger units are currently in use across the country.

17.     The Bair Hugger consists of a portable heater/blower connected by a flexible hose to a disposable blanket that is positioned over (or in some cases under) surgical patients.  The system warms patients during surgery by blowing hot air on a patient's exposed skin.

18.     The hot air produced by Bair Hugger accumulates under the surgical drape covering the patient and escapes from under the surgical drape below the level of the surgical table or at the head end of the surgical table. This escaped air creates air flow currents that flow against the downward air flow of the operating room. As this warmed air rises, it deposits bacteria from the floor of the surgical room into the surgical site.

19.     At some point between 2002 and 2009 the Defendants reduced the efficiency of the air filtration of Bair Hugger blowers. This action reduced the safety of such blowers.

20.     As a result of these actions by the Defendants, the internal airflow paths of Bair Hugger blowers become contaminated with pathogens.

21.     The pathogens contaminating the internal airflow paths of Bair Hugger blowers incubate and proliferate therein.

22.     These pathogens are then expelled from the interior of the Bair Hugger blower by the outward airflow, travel through the hose into the disposable blanket and escape into the operating room.

23.     The Defendants have been aware of the pathogenic contamination of the airflow paths of Bair Hugger blowers since at least 2009.

24.     The Defendants have actively and aggressively marketed the Bair Hugger as safe in both general and orthopedic surgeries despite their knowledge to the contrary.

25.     In a communication to the Food and Drug Administration ("FDA") in September 2000, Defendants represented that the Bair Hugger's filtration system meets HEPA ("High Efficiency Particulate Air") Standards. This statement was false at the time Defendants made it and it remains false today. To meet HEPA standards, an air filter must be capable of removing 99.97% of all particles 0.3 microns or larger. The filter of the Bair Hugger, which is marketed as HEPA compliant, is only capable of removing less than 65% of all such particles. When the Defendants made these representations, they had actual knowledge of their falsity.

26.     In June of 1997, in a letter to the FDA, the Defendants admitted that "air blown intraoperatively across the surgical wound may result in airborne contamination." The  Defendants addressed this flaw in their products by making further misrepresentations to the FDA when they stated that the risk of contamination by air flow is obviated because all "Bair Hugger Blankets designed for

use in the operating room feature a tape barrier which prevent [sic] air from migrating toward the surgical site." That statement by the Defendants was and is patently false. A number of Bair Hugger blankets marketed as safe for use in surgeries do not utilize a taped edge at all. Instead, those blankets blow contaminated air directly toward the surgical field.  Also, the statement that the taped barrier would contain the contaminated air is false because it ignores the fact that the heated air from the Bair Hugger rises against the general downward airflow of the operating theatre.  The presence of a tape edge does nothing to prevent the Bair Hugger from facilitating the movement of pathogens from the floor of the operating room to the surgical site.  When the Defendants made these representations, they had actual knowledge of their falsity.

27.    In their website, www.fawfacts.com/laminar_airflow/  (last visited August 3, 2015), the Defendants make the following misrepresentations:

a.  Contamination mobilized by the convection currents generated by the Bair Hugger cannot reach the surgical site because "[a]ir velocity within the operating room is many times stronger than that of a forced-air warming blanket";

b.  "The air emerging from the blanket is directed downward by the surgical drape and emerges under the operating room table and is drawn away through the laminar system's return air inlets;"

c.  "It's been suggested that warm air rising above the Bair Hugger blanket could interfere with the downward laminar flow toward the surgical site.  It should be noted that the Bair Hugger warming unit delivers less than one percent of the airflow of a laminar flow system and the momentum of the downward air is far greater than the upward momentum imparted to the air above the blanket."

28.    The statements in the preceding paragraph are false and intentionally misleading. Through these statements, the Defendants disguise the fact that the issue is not the strength of the airflow in a laminar system but the heat of the air generated by the Bair Hugger.  The cold air circulated with the operating room, having a higher density than the air heated by the Bair Hugger, falls to the

floor which forces the contaminated air at the floor of the operating room, now warmed by the waste heat from the Bair Hugger, to rise into the sterile field and the surgical site. The heated air rises, and is not "drawn away" as the Defendants falsely claim in their advertisement.

29.    In an advertisement that appeared in multiple medical publications as early as 2010, available online at  http://www.fawfacts.com/_asset/zn062p/AJIC.pdf (last visited August 3, 2015), the Defendants made the following false and deliberately misleading claims:

> "While simple logic makes it clear that forced air warming has no impact on laminar conditions, science also supports this. A forced air warming blanket delivers less than one percent of the airflow of a laminar flow system and therefore is unable to affect laminar flow ventilation systems."

As published scientific research, before and after this statement, has demonstrated, this statement is untrue.  The exhaust generated by the Bair Hugger creates convective airflow patterns which disrupt the laminar flow of the operating theater.

30.    In a communication that appeared in *Healthcare Purchasing News* in July of 2012, the Defendants' public relations and communications specialist Greta Deutsch stated "some conductive-warming manufacturers have alleged that forced-air warming increases bacterial contamination of operating rooms or interrupts laminar airflow.  These accusations have no factual basis." Again, this statement ignores numerous published studies documenting the adverse effects the Bair Hugger has on laminar airflow.

31.    The publication of numerous peer-reviewed studies identifying and documenting the critical safety shortcomings of the Bair Hugger should have prompted the Defendants to redesign or discontinue their product. Instead, those criticisms only caused the Defendants to amplify their efforts to champion the Bair Hugger. These publications include, but are not limited to, the following:

<ol type="a" start="1">
<li>Albrecht M., et al. Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. *Am J Infect Control* 2010;39:321-8;</li>

<li>Leaper D., et al. Forced-air warming: a source of airborne contamination in the operating room? *Orthopedic Rev.* 2009;1(2):e28;</li>

<li>McGovern, P.D., et al. Forced-air warming and ultra-clean ventilation do not mix. *J Bone and Joint Surg-Br.* 2011;93-B(11):1537-1544;</li>

<li>Legg, A., et al. Do forced air patient-warming devices disrupt unidirectional downward airflow? *J Bone and Joint Surg-Br.* 2012;94-B:254-6;</li>

<li>Belani, K., et al. Patient warming excess heat: The effects on orthopedic operating room ventilation performance. *Anesthesia & Analgesia* 2012 (prepublication on-line) 2013;117(2):406-411;</li>

<li>Dasari, K.B., et al. Effect of forced air warming on the performance of operating theatre laminar flow ventilation. *Anaesthesia* 2012;67:244-249.</li>
</ol>

32.     The effect of these misrepresentations was to mislead healthcare providers about the safety of the Bair Hugger for use in surgical procedures. The Defendants were aware of the falsity of their misrepresentations at the time those misrepresentations were authored.

33.     Rather than alter the design of their product or warn physicians of the dangers associated with the Bair Hugger, as numerous studies confirm, the Defendants have chosen to "double down" on their efforts to promote their defective product.

34.     Plaintiff's physicians relied upon the above representations and advertisements to Plaintiff's detriment. Any reasonable and competent physician would not use a Bair Hugger in an orthopedic implant surgery if they were fully apprised of the dangers and risks associated with doing so. However, through misrepresentations to the public, the medical community, and the FDA, the Defendants actively and knowingly concealed the propensity of these devices to cause infection in orthopedic implant surgeries.

35.     As a result of the failure of the Defendants' Bair Hugger to maintain the sterility of the surgical area and the Defendants' wrongful conduct in designing, manufacturing, and marketing this defective product, Plaintiff and Plaintiff's physician were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of the Defendants' acts, omissions and misrepresentations.

### COUNT ONE
### AEMLD

36.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

37.     Defendants are liable to the Plaintiff for the damages sustained based on the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) as the Defendants manufactured, designed, and/or sold the Bair Hugger, a defective device, which, because of its unreasonably unsafe condition, injured the Plaintiff when such product, substantially unaltered, was put to its intended use. Furthermore, Defendants failed to adequately warn the Plaintiff of the unreasonably dangerous nature of this Defective Device.

38.     As a direct and proximate result of the Defendants' defective design, manufacturing defect, and/or Defendants' failure to warn of the Bair Hugger's dangers, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

8

## COUNT TWO
## <u>NEGLIGENCE AND WANTONNESS</u>

39.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

40.     The Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger.

41.     The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

       a.  Failing to properly and thoroughly test the Bair Hugger before releasing the device to market;

       b.  Failing to properly and thoroughly analyze the data resulting from the pre-market tests of the Bair Hugger;

       c.  Failing to conduct sufficient post-market testing and surveillance of the Bair Hugger;

       d.  Designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the Bair Hugger and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

       e.  Failing to exercise due care when advertising and promoting the Bair Hugger; and

       f.  Negligently continuing to manufacture, market, advertise, and distribute the Bair Hugger after Defendants knew or should have known of its adverse effects.

42.     As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

43.     In performing the foregoing acts, omissions, and misrepresentations, Defendants acted grossly negligent, fraudulently, and with malice so as to justify an award of punitive and/or exemplary damages.

**COUNT THREE**
**BREACH OF EXPRESS WARRANTY**

44.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

45.     The Defendants expressly represented to Plaintiff and other consumers and the medical community that the Bair Hugger was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

46.     The Bair Hugger does not conform to the Defendants' express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injury.

47.     At all relevant times, the Bair Hugger did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

48.     Plaintiff, other consumers, and the medical community reasonably relied upon the Defendants' express warranties for the Bair Hugger.

49.     At all relevant times, the Bair Hugger was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendants.

50.     Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

51.     As a direct and proximate result of the breach of Defendants' warranties, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing

expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

52.    Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

53.    At the time Defendants marketed, sold, and distributed the Bair Hugger, Defendants knew of the use for which the product was intended and impliedly warranted the product to be of safe merchantable quality, safe, fit and effective for such use.

54.    Defendants knew, or had reason to know, that Plaintiff and his physicians would rely on Defendants' judgment and skill in providing the Bair Hugger for the intended use.

55.    Plaintiff and Plaintiff's physicians reasonably relied upon the skill and judgment of Defendants as to whether the Bair Hugger was of merchantable quality, safe, fit, and effective for its intended use.

56.    Contrary to such implied warranty, the Bair Hugger was not of merchantable quality or safe or fit or effective for its intended use, because the product was, and is, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Bair Hugger was used.

57.    As direct and proximate result of the breach of implied warranty of merchantability, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT FIVE
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

58.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

59.     At the time Defendants marketed, sold, and distributed the Bair Hugger, Defendants knew of the particular purpose for which the product was intended and warranted the product to be of safe merchantable quality, safe, fit and effective for such use.

60.     Defendants knew, or had reason to know, that Plaintiff and his physicians would rely on Defendants' judgment and skill in providing the Bair Hugger for that particular use.

61.     Plaintiff and his physicians reasonably relied upon the skill and judgment of Defendants as to whether the Bair Hugger was of merchantable quality, safe, fit, and effective for its particular purpose.

62.     Contrary to such implied warranty, the Bair Hugger was not of merchantable quality or safe or fit or effective for its particular purpose, because the product was, and is, unreasonably dangerous, defective, unfit and ineffective for the particular purposes for which the Bair Hugger was used.

63.     As direct and proximate result of the breach of implied warranty of fitness for particular purpose, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

**COUNT SIX**
**NEGLIGENT MISREPRESENTATION**

64.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

12

65.     The Defendants made negligent misrepresentations with respect to the Bair Hugger including, but not limited to, the following particulars:

      a.  The Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

      b.  The Defendants represented the Bair Hugger was safer than other patient warming systems.

66.     Defendants did not exercise reasonable care or competence in obtaining or communicating the information to the public regarding the characteristics and qualities of the Bair Hugger.

67.     Plaintiff and Plaintiff's physicians did, in fact, reasonably rely upon the representations.

68.     As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

69.     The Defendants' conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendants' conduct warrants an award of punitive damages against Defendants in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## COUNT SEVEN
## FRAUDULENT MISREPRESENTATION

70.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

71.     The Defendants made fraudulent misrepresentations with respect to the Bair Hugger in the following particulars:

  a.   The Defendants represented through the labeling, advertising, marketing materials, seminar presentations publications, notice letters, and regulatory submissions that the Bair Hugger had been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

  b.   The Defendants represented Bair Hugger was safer than other patient warming systems.

72.     Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of the Bair Hugger to consumers, including Plaintiff, and the medical community.

73.     The representations were made by Defendants with the intent that doctors and patients, including Plaintiff, rely upon them.

74.     The Defendants' representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of the Bair Hugger.

75.     Plaintiff and his physicians did in fact rely upon the representations. In the absence of the Defendants' representations, the Bair Hugger would not be used in implantation surgeries such as the one at issue in this case.

14

76.    The Defendants' fraudulent representations evinced its callous, reckless, willful, and willful indifference to the health, safety, and welfare of consumers, including Plaintiff.

77.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

78.    The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter this Defendants and others from engaging in similar conduct in the future.

## COUNT EIGHT
## FRAUDULENT CONCEALMENT

79.    Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

80.    Defendants fraudulently concealed information with respect to the Bair Hugger in the following particulars:

     a.    Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger was safe and fraudulently withheld and concealed information about the substantial risks of using the Bair Hugger; and

b.  Defendants represented that the Bair Hugger was safer than other alternative systems and fraudulently concealed information which demonstrated that the Bair Hugger was not safer than alternatives available on the market.

81.   The Defendants had sole access to material facts concerning the dangers and unreasonable risks of the Bair Hugger.

82.   The concealment of information by the Defendants about the risks of the Bair Hugger was intentional, and the representations made by Defendants were known by Defendants to be false.

83.   The concealment of information and the misrepresentations about the Bair Hugger was made by the Defendants with the intent that doctors and patients, including Plaintiff, rely upon them.

84.   Plaintiff and his physicians relied upon the representations and were unaware of the substantial risks of the Bair Hugger which the Defendants concealed from the public, including Plaintiff and his physicians.

85.   As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

86.   The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter this Defendants and others from engaging in similar conduct in the future.

**COUNT NINE**
**FRAUDULENT INDUCEMENT AND SUPPRESSION**

87.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

88.     Defendants misrepresented to the Plaintiff and the health care industry the safety and effectiveness of the Bair Hugger and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of the Bair Hugger.

89.     Defendants made misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that the Bair Hugger had defects, dangers, and characteristics that were other than what the Defendants had represented to the Plaintiff and the health care industry generally. Specifically, Defendants misrepresented to and/or actively concealed from the Plaintiff, the health care industry and consuming public that:

> a.   the Bair Hugger had been tested and found to be safe and effective for use during orthopedic implant surgeries; and

> b.   that the Bair Hugger was safer, in better quality and in character than other alternative systems and fraudulently concealed information which demonstrated that the Bair Hugger was not safer than alternatives available on the market.

90.     The misrepresentations of and/or active concealment alleged were perpetuated directly and/or indirectly by Defendants.

91.     Defendants knew or should have known that these representations were false and made the representations with the intent or purpose that the Plaintiff and health care industry would rely on them, leading to the use of the Bair Hugger.

17

92.     At the time of the Defendants' fraudulent suppression, Plaintiff was unaware of the falsity of the statements being made and believed them to be true.  Plaintiff had no knowledge of the information concealed and/or suppressed by the Defendants.

93.     Plaintiff justifiably relied on and/or were induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendants did suppress, conceal or failed to disclose to the Plaintiff's detriment.

94.     Defendants had a post-sale duty to warn Plaintiff and the public about the potential risks and complications associated with the Bair Hugger in a timely manner.

95.     The misrepresentations and active fraudulent concealment by the Defendants constitutes a continuing tort against the Plaintiff.

96.     Defendants made the misrepresentations and actively concealed information about the defects and dangers of the Bair Hugger with the intention and specific desire that Plaintiff's health care professionals and the consuming public would rely on such or the absence of information in selecting the Bair Hugger.

97.     As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

98.     The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an

amount sufficiently large to be an example to others, and to deter this Defendants and others from engaging in similar conduct in the future.

## COUNT TEN
## LOSS OF CONSORTIUM

99.    Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

100.    Plaintiff's Spouse, Sarah Rhoton, is the wife of Plaintiff, James Rhoton, and was the wife of Plaintiff at all times referred to herein.

101.    The aforesaid breach of legal duties by the Defendants as set forth herein combined and concurred and, as a proximate consequence of said negligent, wanton or wrongful conduct, the plaintiff, Sarah Rhoton was caused to suffer the following injuries and damages:

    a.   She was caused and will be caused in the future to lose the services and consortium of her husband, James Rhoton; and

    b.   She was caused and will be caused in the future to suffer great emotional and mental distress and anguish.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs requests that the trier of fact render a verdict for the Plaintiffs and against the Defendants, jointly and severally, for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by them due to the Defendants' conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of Defendants' conduct.  Further, Plaintiffs requests that the Court enter judgment consistent with said verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

    a.  For an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

    b.  For an award of punitive or exemplary damages against Defendants;

    c.  For reasonable attorney fees and costs;

    d.  For pre-judgment interest; and

    e.  For such further and other relief this Court deems just and equitable.

## JURY DEMAND

Plaintiffs herein demand a trial by jury.

Dated:      August 3, 2015        Respectfully submitted,

                                    /s/ Chris T. Hellums
                                    CHRIS T. HELLUMS
                                    AL Bar No.: ASB-5583-L73C
                                    chrish@pittmandutton.com
                                    JONATHAN S. MANN
                                    AL Bar No.: ASB-1083-A36M
                                    jonm@pittmandutton.com
                                    *Attorneys for Plaintiffs*

**OF COUNSEL:**
PITTMAN, DUTTON & HELLUMS, P.C.
2001 Park Place North
Suite 1100
Birmingham, AL 35203
(205) 322-8880
(205) 328-2711 facsimile

**<u>PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:</u>**

3M Company
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Arizant Healthcare, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104