FILED

2015 Dec-03  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES RHOTON, et al,          }
                              }
        Plaintiffs,           }
                              }    CIVIL ACTION NO.
v.                            }    2:15-cv-1306-WMA
                              }
3M Company, et al.,           }
                              }
        Defendants.           }

**MEMORANDUM OPINION**

On August 3, 2015, plaintiffs James Rhoton and Sarah Rhoton ("the Rhotons") filed this action against defendants 3M Company ("3M") and Arizant Healthcare Inc. ("Arizant") seeking damages under several theories for alleged injuries sustained when Mr. Rhoton developed a MRSA infection after surgery in which a Bair Hugger Forced Air Warming device ("Bair Hugger") manufactured by defendants was used. (Doc. 1).  On September 1, 2015, defendants filed a joint motion to dismiss the complaint. (Doc. 6).  On September 18, 2015, the Rhotons filed a response (Doc. 12), and defendants filed their reply on September 30, 2015 (Doc. 15).  The parties have thoroughly briefed the issues.

For the reasons stated below, defendants' motion will be partially granted and partially denied.

I.    **Statute of Limitations**

"A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in

1

their complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotes omitted).   Therefore, the "granting of a motion to dismiss on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Holt v. Valls*, 395 F. App'x 604, 606 (11th Cir. 2010).

"The very basic and long settled rule of construction of [Alabama] courts is that a statute of limitations begins to run . . . as soon as the party in whose favor it arises is entitled to maintain an action thereon." *Wheeler v. George*, 39 So. 3d 1061, 1084 (Ala. 2009)(italics omitted).  In Alabama, "[a]n action alleging negligence, wantonness, or liability under the AEMLD must be brought within two years after the cause of action accrued." *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 159 (Ala. 1992) (citing Ala. Code § 6-2-38(l )).   Similarly, the applicable statute of limitations in Alabama for the various species of fraud is two years. *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 30 (Ala. 2008)*.* "The "discovery rule" in Alabama applies only to fraud actions." *Utilities Bd. of City of Opp v. Shuler Bros.*, 138 So. 3d 287, 293 (Ala. 2013) (citing Ala. Code. § 6-2-3).  "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Bryant Bank v. Talmage Kirkland & Co.*,

2011 WL 11742121, at *6 (Ala. May 23, 2014).

Although the Rhotons do not give a specific date upon which Mr. Rhoton's MRSA infection developed, they do allege that the MRSA infection and subsequent treatment occurred "within less than eight months from the original [July 15, 2013] implant surgery." (Doc. 1 at 2-3). Having filed this action on August 3, 2015, the Rhotons' tort and fraud claims are within the two year statute of limitations. (Doc. 1 at 1). While 3M and Arizant assert that the MRSA infection must have occurred in "close proximity" to the surgery and therefore occurred prior to August 3, 2013 (Doc. 6 at 9), this is conjecture unsupported on the face of the complaint and thus inappropriate for resolution on a motion to dismiss. Additionally, 3M and Arizant argue the Rhotons' fraud claims arose prior to August 3, 2013 because their complaint cites certain studies published in 2009, 2011, and 2012 (Doc. 6 at 10-12), however, the statute of limitations did not begin to run until Mr. Rhoton's infection related injuries arose thereby giving rise to various causes of actions for fraud based on that particular injury. Because the applicable statutes of limitations do not bar the Rhotons' tort and fraud claims, defendants' motion to dismiss will be denied.

## II.  Causation

On a Rule 12(b)(6) motion "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions [,however,] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face . . . [where a plaintiff] nudge[s] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Rhotons allege that the injuries suffered by Mr. Rhoton were caused when a Bair Hugger unit manufactured by defendants introduced contaminants into Mr. Rhoton's open surgical wounds resulting in a MRSA infection. (Doc. 1 at 2-3).  Specifically, the Rhotons allege that between 2002 and 2009 defendants reduced the efficiency of the device (Doc. 1 at 4) so that now the Bair Hugger "is only capable of removing less than 65% of all such particles" (Doc. 1 at 4), which "increases bacterial contamination of operating rooms or interrupts laminar airflow" (Doc. 1 at 6). While defendants dispute these factual allegations and assert there are a "myriad more plausible sources" of infection (Doc. 6 at 15), "at this early stage of litigation, these allegations are sufficient to avoid dismissal under Rule 12(b)(6)." *Houston v. Bayer Healthcare Pharm.*, Inc., 16 F. Supp. 3d 1341, 1348 (N.D. Ala. 2014).  Defendants fail to identify any meaningful distinction between the plausibility of the causal connection in *Houston* and

4

the Bair Hugger device and injuries alleged in this case.  Rather,
like *Houston*, the Rhotons meet the test of plausibility and
defendants' factual counterpoint is best left to determination on
summary judgment[1] or by a jury.  Defendants' motion to dismiss will
be denied.

### III. Breach of Warranty

Under the Alabama Commercial Code, an express warranty is
created by "[a]ny affirmation of fact or promise made by the seller
to the buyer which relates to the goods and becomes part of the
basis of the bargain [or] [a]ny description of the goods which is
made part of the basis of the bargain." Ala. Code § 7-2-313.

While the Rhotons voluntarily abandon their implied warranty
claims in Counts Four and Five, they maintain that their express
warranty claim in Count Three properly states a basis for relief.
(Doc. 12 at 12-15).  The Rhotons allege that defendants expressly
represented that the Bair Hugger  was "safe and fit for its
intended purpose, that it was of merchantable quality, that it did
not produce any dangerous side effects, and that it was adequately
tested." (Doc. 1 at 10).  While defendants argue that the complaint
fails to identify any specific statement to form the "basis of the

---

[1] Defendants' causation argument relies in part on *Dowdy v.
Suzuki Motor Corp.*, 567 F. App'x 890, 892 (11th Cir. 2014), for
the proposition that causation requires a plaintiff to rise above
"supposition or speculation", however, as the Rhotons accurately
point out, the Eleventh Circuit was reviewing a decision on a
motion for summary judgment.

bargain" (Doc. 6 at 15-16), the Rhotons support their express warranty claim by alleging that defendants "actively and aggressively marketed the Bair Hugger as safe in both general and orthopedic surgeries." See *Houston*, 16 F. Supp. 3d at 1349 ("[p]laintiff has alleged facts to support her express warranty claim, albeit by the skin of her teeth"). Therefore, while the Rhotons concede that their implied warranty claims fail to state a proper claim for relief (Doc. 12 at 12-13), their express warranty claim satisfies Rule 8(a) and defendants' motion to dismiss will be denied.[2]

## IV.  **Fraud**

In Alabama, "[t]he elements of fraud are: (1) a

---

[2]   Although the parties address the sufficiency of the claim under Fed. R. Civ. Proc. 8, the parties are silent as to whether certain claims are preempted by federal law.  The Alabama Supreme Court has addressed preemption of state law claims against FDA regulated drug manufacturers, *Wyeth, Inc. v. Weeks*, 159 So. 3d 649 (Ala. 2014), however, the question of federal preemption relating to medical device manufacturers is more ambiguous. Compare *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 501-02 (1996) (finding that negligence and strict-liability claims under Florida state law against a medical device manufacturer were not preempted) with *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008) (finding negligence, strict liability, and implied warranty claims under New York common law against a medical device manufacturer were preempted).  In the preemption context, the FDA itself has also expressed concern about state common law actions conflicting with its regulations. See Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922-01 (Jan. 24, 2006) ("[s]tate law actions can rely on and propagate interpretations of the act and FDA regulations that conflict with the agency's own interpretations and frustrate the agency's implementation of its statutory mandate").

misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Brushwitz v. Ezell*, 757 So.2d 423, 429 (Ala. 2000). Under Federal Rule of Civil Procedure 9(b), where a plaintiff's complaint alleges "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Specifically, in the Eleventh Circuit under this heightened pleading standard a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). However, "[l]ike the *Iqbal* standard, this is not a hard-and-fast test, but can vary based on the nature of the claim asserted." *Houston*, 16 F. Supp. 3d at 1349.

Because the Rhotons' fraud claims in Counts Seven, Eight, and Nine are against medical device manufacturers, it would be erroneous for the court to "take an overly rigid view of the [Rule 9] formulation." *Id.* at 1350. Instead, defendants "may be held liable for fraud or misrepresentation (by misstatement or omission) based on information and warning deficiencies on a [device's or] drug's labeling." *Id.* (citation omitted). The Rhotons adequately

allege reliance through their physician, a learned-intermediary, who relied upon defendants' representations "through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions." (Doc. 1 at 13, 14, and 15).  These "cases involving complex products, such as those in which pharmaceutical companies are selling prescription drugs, the learned intermediary doctrine applies. . . [and] the adequacy of the defendant's warning is measured by its effect on the physician, . . . to whom it owed a duty to warn, and not by its effect on [the consumer." *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 673 (Ala. 2014) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313-14 (11th Cir. 2000)).  Further, as a complex medical device subject to certain FDA approval requirements, the Rhotons adequately allege that defendants had a duty to disclose and warn about the safety of the device. (Doc. 1 at 14, 16, 18).  These medical device and drug manufacturer cases also often involve "FDA approval requirements" whereby a plaintiff can "base her fraud and misrepresentation claims on the defendant manufacturer's breach of its duty to warn about the risks associated with the long-term use of the drug in its labeling." *Houston*, 16 F. Supp. 3d at 1350 (quotation omitted).  Therefore, defendants motion to dismiss should be denied because the Rhotons' fraud claims as contained in

Counts Seven, Eight, and Nine, satisfy Rule 9.[3]

## V.   Loss of Consortium

In Alabama, a loss of consortium claim "is derivative of the claims of the injured spouse . . . [whereby the] loss-of-consortium claim must fail if [the direct] claims fail." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008) (citing *Ex parte Progress Rail Servs. Corp.*, 869 So.2d 459, 462 (Ala. 2003) ("Even if the claims alleging loss of consortium and loss of services could otherwise be legally cognizable, they are derivative of, and dependent upon the outcome of, the direct claim")). Because the Rhotons' other claims survive defendants' motion to dismiss, the derivative loss of consortium claim as stated in Count Ten likewise survives dismissal. Defendants' motion as to Count Ten will be denied.

## VI.  Punitive Damages

"[T]here is no separate cause of action in Alabama for punitive damages." *Franklin Cnty. Sch. Bd. v. Lake Asbestos of Quebec, Ltd.*, 1986 WL 69060, at *8 (N.D. Ala. Feb. 13, 1986). Rather, punitive damages are only part of the relief prayed for in a claim and the complaint must allege the requisite basis for the

---

[3] In addition to possible federal preemption of state common law claims that conflict with FDA regulations, state law claims for fraud present an additional preemption question where such fraud claims exist solely by virtue of FDA requirements. See *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (finding implied federal preemption where fraud claims existed "solely by virtue of the FDCA disclosure requirements").

award.  In Alabama, "[p]unitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20.

The Rhotons include a prayer for punitive damages in Count Two for negligence and wantonness (Doc. 1 at 10) and Count Six for negligent misrepresentation (Doc. 1 at 13).  The Rhotons allege that defendants continued "to manufacture, market, advertise, and distribute the Bair Hugger after Defendants knew or should have known of its adverse effects." (Doc. 1 at 9).  More specifically, the Rhotons allege that defendants "have been aware of the pathogenic contamination of the airflow paths of Bair Hugger blowers since at least 2009 . . . [yet] have actively and aggressively marketed the Bair Hugger as safe in both general and orthopedic surgeries despite their knowledge to the contrary." (Doc. 1 at 4).  Therefore, at the motion to dismiss stage, these allegations are sufficient to support a prayer for punitive damages. See *Raley v. Bank of Am., N.A.*, 2014 WL 6684906, at *4 (N.D. Ala. Nov. 25, 2014) ("While these are unproven allegations, they are sufficient at this stage to plausibly allege . . . [a] wantonness claim would pass muster under *Twombly* and *Iqbal* if this court should exercise its supplementary jurisdiction").

**CONCLUSION**

Based on the foregoing, defendants' motion will be granted as to Counts Four and Five and said counts will be dismissed with prejudice.  Defendants' motion will be denied as to all other counts.

Done this 3rd day of December, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE